UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re UBS AUCTION RATE SECURITIES LITIGATION<br><br>This Document Related To:<br>All Actions | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Master File No. 08-CV-02967-LMM |
| RANDOLPH BONNIST, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>UBS AG, UBS SECURITIES LLC and UBS FINANCIAL SERVICES, INC.<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 08-CV-04352-LMM |

**RESPONSE OF THE CHANDLER GROUP TO CROSS MOTIONS FOR CONSOLIDATION OF ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

**TABLE CONTENTS**

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 1

ARGUMENT .......................................................................................................................... 2

I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED ................................... 2

II.  THE CHANDLER GROUP SHOULD BE APPOINTED LEAD PLAINTIFF ........... 3

    A.   The Procedure Required By the PSLRA ............................................................. 3

    B.   The Chandler Group Is Entitled To The Statutory Presumption Of Being The Most Adequate Plaintiff ...................................................................................... 4

        1.   The Chandler Group Has Complied With the PSLRA .............................. 4

        2.   The Chandler Group Has The Largest Financial Interest In The Relief Sought By The Class ................................................................................. 4

        3.   The Court Should Reject The Streits' Calculation Of Financial Interest ........... 5

        4.   The Chandler Group Otherwise Satisfies Rule 23 ..................................... 7

    C.   The Presumption That The Chandler Group Is The "Most Adequate Plaintiff" Has Not Been Rebutted .......................................................................................... 8

        1.   The Size Of The Chandler Group Does Not Undermine Its Typicality Or Adequacy ................................................................................................... 9

        2.   The Chandler Group Will Not Displace An Institutional Investor With A Substantial Financial Interest .................................................................. 10

        3.   The Possible Inclusion Of Certain Claims In An Amended Complaint Has No Bearing On The Ability Of The Chandler Group To Lead This Case ............ 11

III. THE CHANDLER GROUP'S CHOICE OF COUNSEL SHOULD BE APPROVED ................................................................................................................. 11

CONCLUSION ..................................................................................................................... 12

i

# TABLE OF AUTHORITIES

**Cases**

*Albert Fadem Trust v. Citigroup, Inc.*
  239 F. Supp. 2d 344 (S.D.N.Y. 2002) ............................................................................ 7

*Constance Sczesny Trust v. KPMG LLP*
  23 F.R.D. 319 (S.D.N.Y. 2004) ..................................................................................... 8

*In re American Bank Note Holographics Secs. Litig.*
  93 F. Supp. 2d 424 (S.D.N.Y. 2000) ............................................................................ 9

*In re Bausch & Lomb Inc. Sec. Litig.*
  244 F.R.D. 169 (W.D.N.Y. 2007) ........................................................................ 4, 6, 8

*In re Cavanaugh*
  306 F.3d 726 (9th Cir. 2002) ....................................................................................... 4

*In re Cendant Corp. Litig.*
  264 F.3d 201 (3d Cir. 2001) ........................................................................................ 4

*In re Centerline Holding Company Securities Litigation*
  2008 U.S. Dist. LEXIS 36406 (S.D.N.Y. May 5, 2008), ............................................ 6

*In re Crayfish Co. Sec. Litig.*
  No. 00 Civ. 6766IDAB, 2002 WL 1268013 (S.D.N.Y. June 06, 2002) .................. 10

*In re eSpeed, Inc. Sec. Litig.,*
  232 F.R.D. 95 (S.D.N.Y. 2005) ............................................................................. 9, 10

*In re Fuwei Films Sec. Litig.*
  247 F.R.D. 432 (S.D.N.Y. 2008) ......................................................................... 5, 7, 8

*In re Host Am. Corp. Sec. Litig*
  236 F.R.D. 102 (D. Conn. 2006) .............................................................................. 8, 9

*Reimer v. Ambac Fin. Group, Inc.*
  2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008) ............................................. 9

*Strougo v. Brantley Capital Corp.*
  243 F.R.D. 100 (S.D.N.Y. 2007) ................................................................................. 3

*Weltz v. Lee*
  199 F.R.D. 129 (S.D.N.Y. 2001) ................................................................................. 9

**Statutes**

15 U.S.C. § 78u-4(a) ................................................................................................... passim

Fed. R. Civl. P. 42(a)................................................................................................................2

Fed. R. Civ. P. 6(a) ..................................................................................................................4

## INTRODUCTION

This class action alleges that UBS violated the Securities and Exchange Act of 1934 by deceptively marketing auction rate securities to investors as risk-free, cash-equivalent alternatives to money market funds, when they were in fact complex, long-term financial instruments. These securities became illiquid on February 13, 2008 after UBS and all other major broker-dealers abruptly withdrew their "support" for the auction rate securities market.

Before this Court are five motions by Class members seeking consolidation of the related actions, their appointment as Lead Plaintiff, and approval of their selection of counsel. In the moving papers, the competing applicants identified the following financial interests in this litigation, based on their holdings of illiquid auction rate securities purchased from UBS during the Class Period:

- The Chandler Group: $28,475,083;
- The Streits: $16,850,000;
- The Sanchez Group: $5,900,000;
- Steven Oppenheimer: $1,550,000; and
- The UBS ARS Group: $1,095,000.

Although some of the Chandler Group's securities have since been redeemed, the Chandler Group continues to hold approximately $25,675,000 in illiquid auction rate securities. Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Chandler Group has the largest financial interest and is presumed to be the "most adequate plaintiff" to represent the Class. Based on this statutory presumption, and because the Chandler Group satisfies the PSLRA's typicality and adequacy requirements, the Chandler Group should be appointed Lead Plaintiff and its selection of counsel should be approved.

## FACTUAL BACKGROUND

As alleged in the *Chandler* Complaint, UBS deceptively marketed auction rate securities to members of the Class. Auction rate securities are municipal bonds, corporate bonds or preferred stocks that pay interest or dividends at a rate periodically reset though auctions,

1

typically every 7, 14, 28 or 35 days. The *Chandler* Complaint alleges that UBS marketed auction rate securities as short-term cash management alternatives to money market funds when they are, in fact, complex long-term investments with maturities of 30 years or more. According to the *Chandler* Complaint, the auction rate securities UBS sold appeared to be liquid and stable only because UBS and other broker-dealers were artificially supporting and manipulating the auction market. On February 13, 2008, all major broker-dealers, including UBS, withdrew their "support" for the auction market, causing the market to collapse. As a result, Class members who had believed they were holding liquid investments became saddled with long-term securities that they are unable to sell.

State and federal regulators are now conducting several probes into the collapse of the auction rate securities market. UBS has received subpoenas from the Secretary of the Commonwealth of Massachusetts and the Attorney General of the State of New York. Last month, in the midst of these regulatory probes, UBS agreed to refund $35,000,000 to 20 towns and public agencies in Massachusetts that bought auction-rate securities from UBS.

## ARGUMENT

**I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED**

On May 15, 2008, the Court entered an Order consolidating the *Chandler* and *Sanchez* actions as *In re UBS Auction Rate Securities Litigation*. The Order provides for the consolidation of any other action in this District that involves the same Exchange Act claims against UBS. No movant disputes that the later-filed *Bonnist* action should be consolidated, as it too asserts Exchange Act claims against UBS. The Streits also support consolidation of the *Kassover* action, a class action against UBS arising out of its sale of auction rate securities, which brings claims under the Investment Advisors Act and the common law. The Chandler Group does not oppose that request, as the *UBS Auction Rate Securities Litigation* and *Kassover* involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a).

## II. THE CHANDLER GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The Chandler Group consists of five individuals and a married couple. When the Chandler Group filed its moving papers, its members collectively held $28,475,083 in auction rate securities purchased from UBS during the Class Period.[1] Since that time, some of the Chandler Group's investments have been redeemed by their issuers, leaving the Chandler Group with approximately $25,675,000 in illiquid auction rate securities. The Chandler Group respectfully submits that it should be appointed Lead Plaintiff because it has demonstrated the largest financial interest in this litigation despite the recent redemptions, and it otherwise meet the requirements of the PSLRA and Federal Rule of Civil Procedure 23.

### A. The Procedure Required By the PSLRA

Under the PSLRA, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). "A party is entitled to the statutory presumption of being the most adequate plaintiff if it can show that it: (aa) filed an initial complaint or timely moved for appointment as lead plaintiff; (bb) has the largest financial interest in the relief sought by the class; and (cc) satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure." *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 104 (S.D.N.Y. 2007) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). The presumption that a party is the most adequate plaintiff may be rebutted only upon proof that the party "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

---

[1] As alleged in the *Chandler* Complaint, the Class consists of all persons and entities who purchased auction rate securities from UBS between March 21, 2003 and February 13, 2008, inclusive, and continued to hold such auction rate securities as of February 13, 2008, the date that the auction market collapsed. *See* Complaint, ¶ 12. There are minor variations in the Class Period alleged in the other related complaints.

3

### B. The Chandler Group Is Entitled To The Statutory Presumption Of Being The Most Adequate Plaintiff

#### 1. The Chandler Group Has Complied With the PSLRA

As described in the Chandler Group's initial brief, the notice of the filing of the initial action was published on March 21, 2008. The Chandler Group's motion for appointment was filed on May 20, 2008, and is thus timely made. *See* 15 U.S.C. § 78u-4(a)(3)(A) and (B); Fed. R. Civ. P. 6(a).

#### 2. The Chandler Group Has The Largest Financial Interest In The Relief Sought By The Class

Pursuant to the PSLRA, identification of the most adequate plaintiff "begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (*quoting* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). To calculate each movant's financial interest in the litigation, the Court should "select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002). Generally, courts have considered the following factors in determining a movant's financial interest: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 172 (W.D.N.Y. 2007) (citations and internal quotation marks omitted). For purposes of these motions, the Chandler Group submits that the most objective, easily-applied and consistent method to determine the movants' financial interests is to compare the par value of each movant's auction rate securities that were purchased from UBS during the Class Period and that remain illiquid. Any other approach would require the Court to assign relative values to illiquid securities.

Among the prospective Lead Plaintiffs, the Chandler Group has the largest financial interest in the relief sought by the Class. At the time the Chandler Group filed its initial moving papers, its cumulative financial interest was $28,475,083 — the combined par value of the illiquid auction rate securities the Chandler Group purchased from UBS during the Class Period

4

that had not been redeemed after the Class Period. *See* Declaration of Jonathan K. Levine in Support of the Motion of the Chandler Group for Consolidation of Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Levine Dec."), Exs. B-G (Docket No. 29). Following recent additional redemptions, the Chandler Group now holds approximately $25,670,000 in illiquid auction rate securities.[2] The Chandler Group's financial interest continues to be several million dollars greater than that of the second-largest applicant, the Streits, who held $16,850,000 in illiquid auction rate securities they purchased from UBS during the Class Period at the time they filed their moving papers. *See* Memorandum of Law in Support of the Motion of Aric A. Streit and Mary Streit as Trustees for the Benefit of the Streit Living Trust for Consolidation, Appointment as Lead Plaintiffs and Approval of Lead Plaintiffs' Selection of Co-Lead Counsel ("Streit Memo."), at 2-3 (Docket No. 22). Therefore, the Chandler Group has the largest financial interest of any movant in this litigation.

### 3. The Court Should Reject The Streits' Calculation Of Financial Interest

The Streits overstate their financial interest in this litigation by adding a collateralized loan they incurred *after* the Class Period. The Streits calculate their financial interest first by identifying $16,850,000 in auction rate securities they purchased from UBS during the Class Period. Then, they add $10,000,000 — the amount they borrowed from UBS on March 3-4, 2008, that was secured by the auction rate securities they purchased from UBS and an additional $3,450,000 in auction rate securities they previously purchased from another broker-dealer that

---

[2] The Chandler Group purchased $31,675,083 of auction rate securities from UBS during the Class Period. $3,200,000 of those securities was redeemed by their issuers before the Chandler Group filed its motion for appointment as Lead Plaintiff. Since the filing of the motion, approximately $2,800,000 more of the Chandler Group's auction rate securities have been scheduled for redemption by various issuers. The exact amounts redeemed have yet to be identified. In calculating its financial interest in this litigation, the Chandler Group has excluded the value of redeemed auction rate securities. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436-37 (S.D.N.Y. 2008) (discussing calculation of financial interest for purposes of PSLRA).

had been transferred to UBS. Thus, the Streits contend that their financial interest is $26,850,000. *See* Streit Memo., at 2-3.

The Streits fail to cite any authority for the inclusion of the post-Class Period loan in the calculation of their financial interest. Such a loan is not included among the traditional factors considered in connection with the selection of a Lead Plaintiff. *See In re Bausch & Lomb*, 244 F.R.D. at 172. Moreover, including the loan in the financial interest calculation would allow the Streits to count the same monies twice — first, as their now-illiquid investment purchased from UBS and a second time, as the loan secured in part by that investment. Notably, the loan was secured in part by auction rate securities the Streits purchased from another broker-dealer, Banc of America, and which are thus unrelated to the securities at issue in this case.

The "new math" approach proposed by the Streits (and their counsel Milberg LLP and the Law Offices of George A. Shohet) should be rejected. In *In re Centerline Holding Company Securities Litigation,* 2008 U.S. Dist. LEXIS 36406 (S.D.N.Y. May 5, 2008), Judge Scheindlin, rejected calculations strategically designed to state the largest financial interest in that litigation. In that case, one movant for lead plaintiff, the Burns Group, pled a longer class period than other movants. *Id.* at *10. The court refused to appoint the Burns Group, concluding that its proposed class period "was made in bad faith to ensure that the Burns Group would have the largest loss" among the movants. *Id.* Similarly, the Streits' calculation of financial interest by reference to their post-Class Period collateralized loan deviates from all other movants' calculations, suggesting a "strategic" attempt to obtain appointment as Lead Plaintiff. Accordingly, the Court should reject the Streits' calculation.

The Streits' calculation of financial interest is also improper, because it is not representative of the relief sought by the proposed Class. The PSLRA provides that an adequate lead plaintiff has the "largest financial interest in ***the relief sought by the class***." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) (emphasis added); *see also In re Centerline Holding Co. Sec. Litig.,* 2008 U.S. Dist. LEXIS 36406. Like the other movants, the Streits acknowledge that the operative measure of financial interest at issue is the total amount of auction rate securities

6

purchased from UBS during the Class Period that the movants continue to hold. Unlike all other movants, however, the Streits tack on the amount of loan secured by their auction rate securities. *Compare, e.g.*, Chandler Memo. at 9, *with* Streit Memo. at 9. Only some Class members have taken out loans in response to the illiquidity of their auction rate securities, and the Streits have not explained how the loan transactions enter into the determination of the relief sought by the Class. In consequence, the Streits' formulation of financial interest does not represent the relief sought by the entire Class and is thus improper.

By the same token, including the collateralized loan in their asserted financial interest undermines the Streit movants' typicality to serve as Lead Plaintiff. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436-37 (S.D.N.Y. 2008). As such a debt secured by auction rate securities is not a universal feature of proposed Class members' financial interest in this litigation, the Streits' formulation is not typical. That the Streits make no reference to their loan in the typicality section of their motion is telling. Streit Memo. at 10-13. Instead, in discussing typicality, the Streits focus solely on the amount of securities purchased during the Class Period that remain illiquid. *Id.* Accordingly, the Court should reject the Streits' calculation.

### 4. The Chandler Group Otherwise Satisfies Rule 23

For the purposes of a lead plaintiff motion, only the typicality and adequacy prongs of Rule 23 are relevant. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008) ("[T]he moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." (quotations omitted)); *Albert Fadem Trust v. Citigroup, Inc.,* 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."). The Chandler Group satisfies the typicality and adequacy requirements of Rule 23.

As discussed in its previously filed brief, the Chandler Group is typical in that its claims and the claims of all other Class members arise out of their purchases of auction rate securities from UBS during the Class Period as a result of UBS's materially false and misleading

statements and omissions about the liquidity and risk characteristics of those securities and the auction market. The Chandler Group is adequate to represent the Class because its interests are aligned with those of other Class members, and there is no evidence of any antagonism between their interests. In addition, the Chandler Group has selected competent and experienced counsel to prosecute the claims in this case and to serve the interests of the Class. Accordingly, the Chandler Group is the presumptive "most adequate plaintiff" under the PSLRA.

### C. The Presumption That The Chandler Group Is The "Most Adequate Plaintiff" Has Not Been Rebutted

Once a group of investors is found to be the presumptive Lead Plaintiff, that presumption "may be rebutted upon proof by a member of the purported plaintiff class" that the presumptive Lead Plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008); *In re Bausch & Lomb, supra,* 244 F.R.D. at 172; *Constance Sczesny Trust v. KPMG LLP,* 223 F.R.D. 319, 323 (S.D.N.Y. 2004).

This rebuttal analysis is secondary and applies only to the presumptive lead. It does not involve a comparison among the movants as to which is least subject to rebuttal attack.

> **[T]he Court should not undertake a comparative review of all the lead plaintiff motions.** Rather, the Court should consider the motions sequentially, from greatest to smallest loss, applying the presumption that the plaintiff with the greatest loss should be the lead plaintiff, unless and until that presumption is rebutted by a showing that that plaintiff does not meet the Rule 23 criteria.

*In re Host Am. Corp. Sec. Litig.,* 236 F.R.D. 102, 105 (D. Conn. 2006) (emphasis added). This Court should first analyze the ability of the Chandler Group, as presumptive lead, to protect the interests of the Class. If the Court determines that the Chandler Group's presumptive fitness has not been rebutted, no further analysis is necessary, and the Chandler Group should be appointed.

8

1.  **The Size Of The Chandler Group Does Not Undermine Its Typicality Or Adequacy**

Aggregation of the Chandler Group's financial interests is proper. See 15 U.S.C. § 78u-4(a)(3)(B)(i) (providing that a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ."); 15 U.S.C. § 78u-4(a)(3)(B)(iii) (a "person or group of persons" may be an adequate lead plaintiff); *Reimer v. Ambac Fin. Group, Inc.*, 2008 U.S. Dist. LEXIS 38729, *7-8 (S.D.N.Y. May 9, 2008); *In re American Bank Note Holographics Secs. Litig.*, 93 F. Supp. 2d 424, 436 (S.D.N.Y. 2000); *Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001). The Chandler Group is comprised of five individuals and a married couple, all of whom purchased auction rate securities from UBS and held them when the auction market collapsed. The members of the Chandler Group have informed themselves about this litigation, and expect to participate directly in the lawsuit. They have also stated their willingness to serve as Lead Plaintiff as a group. Unlike the Sanchez Group, which is made up of over a dozen individuals and trustees, the Chandler Group is a manageable size, is capable of protecting the interests of the class, and will not allow the case to be controlled exclusively by counsel.

In *In re Host Am. Corp. Sec. Litig.*, the court held that "[t]he majority of courts considering the issue have taken an intermediate position, allowing a group of unrelated investors to serve as lead plaintiffs when it would be most beneficial to the class under the circumstances of a given case, but selecting only a few lead plaintiffs from within a larger group proposed by counsel." 236 F.R.D. at 106. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y.2005) (recognizing that the "majority view ... hold[s] that unrelated investors may aggregate under certain circumstances" and noting that some courts find that "a greater number of plaintiffs allows them, as a group, to wield more control over counsel."); *In re American Bank Note Holographics*, 93 F. Supp.2d at 436 ("The nomination of a group of investors as co-lead plaintiffs is specifically contemplated by the PSLRA."). The Chandler Group fits within these parameters. The management of the case is not jeopardized by the collective action of five individuals and a married couple. *See Weltz*, 199 F.R.D. at 132 (S.D.N.Y. 2001) (permitting

9

aggregation of "group of seven unrelated" investors); *see also In re Crayfish Co. Sec. Litig.*, No. 00 Civ. 6766IDAB, 2002 WL 1268013, at *6 (S.D.N.Y. June 06, 2002) (finding that group of seven investors not so cumbersome as to deliver control of case into hands of lawyers).

### 2. The Chandler Group Will Not Displace An Institutional Investor With A Substantial Financial Interest

The ARS UBS Group argues in its response that Teachers Count should be Lead Plaintiff because it is the only institutional investor proposed. *See* UBS ARS Response at 3-5 (Docket No. 30). Although Teachers Count is a 501(c)(3) non-profit organization, its filings do not suggest that it is the type of institutional investor that Congress had in mind when enacting the PSLRA. For example, Teachers Count does not describe itself as a fiduciary or identify the amount of money that it manages. *Id.*

Even if Teachers Count is considered an institutional investor, the bias in favor of such investors is grounded both in their presumed sophistication and high level of investment. The Court in *In re eSpeed*, supra, speaks of an "institutional investor with **substantial losses**" and of aggregating plaintiffs not displacing an institutional investor which would otherwise be the presumptive lead plaintiff "based on the **amount of losses sustained**." 232 F.R.D. at 99-100 (emphasis added). Teachers Count purchased a single share of auction rate securities for $25,000, the smallest denomination in which these securities were sold. By itself, Teachers Count has the smallest financial interest of any member of a movant group. Even when coupled with Mr. Bonnist, the UBS ARS Group has a financial interest of $1,095,000—again, the smallest investment of all Lead Plaintiff movants. As the *In re Host Am. Corp.* court counsels against conducting a comparative analysis, the UBS ARS Group would only come under consideration as the presumptive Lead Plaintiff after each of the other groups proposed, all with larger financial interests, were rebutted. Thus, the UBS ARS Group's institutional investor argument is insufficient to rebut the presumption that the Chandler Group should be appointed as Lead Plaintiff.

### 3. The Possible Inclusion Of Certain Claims In An Amended Complaint Has No Bearing On The Ability Of The Chandler Group To Lead This Case

The Streits imply that they and their counsel are more fit to lead this case, because they intend to amend the complaint to include add an Investment Advisors Act claim, like that asserted in *Kassover*. *See* Streit Memorandum at 13 n.6. This assertion in no way rebuts the presumption that the Chandler Group should be appointed as Lead Plaintiff. Whether such a claim should be included in an amended complaint will be a decision for Lead Counsel in consultation with the Lead Plaintiff.[3] It need not be made in advance of the Lead Plaintiff appointment.

None of the other movants assert that the Chandler Group is subject to any defenses which they will not face. The Chandler Group submits that it is not subject to any unique defenses. If any movants raise this issue in any response to the Chandler Group's motion, the Chandler Group reserves the right to address such issue in its reply memorandum.

## III. THE CHANDLER GROUP'S CHOICE OF COUNSEL SHOULD BE APPROVED

The Chandler Group has selected three law firms to represent the Class in this matter, subject to Court approval: Girard Gibbs LLP as Lead Counsel, Stueve Siegel Hanson LLP as Co-Lead Counsel, and Seeger Weiss LLP as Liaison Counsel. As shown in the firm resumes filed with the Chandler Group's initial moving papers, all three firms have extensive experience in complex class actions and securities litigation on behalf of investors. These firms filed the initial auction rate securities case against UBS and have been instrumental in investigating this matter since the collapse of the auction rate securities market on February 13, 2008. The Chandler Group's selection of Lead, Co-Lead and Liaison Counsel should be approved.

---

[3] Contrary to the assertion of the Milberg firm and the Shohet law offices in the Streit motion papers, Lead Counsel is appointed by the Lead Plaintiff with the Court's approval pursuant to the PSLRA, *see* 15 U.S.C. § 78u-4(a)(3)(B)(v), not the interim lead counsel rules under Rule 23(g) of the Federal Rules of Civil Procedure. *See* Streit Memo. at 14-15. Nothing prevents the Lead Plaintiff and Lead Counsel from asserting non-Exchange Act claims in a consolidated amended complaint.

## CONCLUSION

For the foregoing reasons and those stated in their moving papers, the Chandler Group respectfully requests that this Court: (1) appoint it as Lead Plaintiff pursuant to 15 U.S.C. § 78u-(a)(3)(B)(i); and (2) approve its selection of counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

DATED:  June 9, 2008

Respectfully submitted,

**GIRARD GIBBS LLP**

By: *Jonathan K. Levine*
Jonathan K. Levine (JL-8390)

Daniel C. Girard
Aaron M. Sheanin
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

**Proposed Lead Counsel**

Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101

**Proposed Co-Lead Counsel**

Christopher A. Seeger (CS-4880)
Stephen A. Weiss (SW-3520)
David R. Buchanan (DB-6368)
**SEEGER WEISS LLP**
One William Street, 10th Floor
New York, NY 10004
Telephone: (212) 584-0757
Facsimile: (212) 584-0799

**Proposed Liaison Counsel**

13

## CERTIFICATE OF SERVICE

I, Jonathan K. Levine, hereby certify that on June 9, 2008, I caused the following document(s) to be filed electronically with the United States District Court for the Southern District of New York through the Court's mandated ECF service:

1. **RESPONSE OF THE CHANDLER GROUP TO CROSS MOTIONS FOR CONSOLIDATION OF ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of June, 2008 at San Francisco, California.

/S/ Jonathan K. Levine