UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                                               :
In Re UBS AUCTION RATE              :   Master File No. 08-CV-02967
SECURITIES LITIGATION               :
                                    :
This Document Relates To:  All Actions  :
                                    :
---------------------------------------------------------------X

**STEVEN OPPENHEIMER'S REPLY MEMORANDUM OF LAW IN
FUTHER SUPPORT OF HIS MOTION FOR APPOINTMENT
<u>AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

Steven Oppenheimer hereby respectfully submits this reply memorandum of law in further support of his motion for appointment as Lead Plaintiff and approving his selection of Stull, Stull & Brody and Weiss & Lurie to serve as Lead Counsel and in response to the competing motions for appointment as lead plaintiff and approval of counsel filed by the Chandler Group, Aric A. Streit and Mary Streit, as Trustees for the Benefit of the Streit Living Trust (the "Streit Group"), the Sanchez Group, and the UBS ARS Group (collectively, the "Competing Movants"). For the reasons contained herein and as set forth in the Memorandum of Law in Further Support of the Motion of Steven Oppenheimer and in Opposition to all Other Motions for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Oppenheimer Opposition Brief") (Dkt. No. 41), the motion of Steven Oppenheimer should be granted.

## ARGUMENT

### STEVEN OPPENHEIMER HAS THE LARGEST FINANCIAL INTEREST OF ANY MOVANT THAT SATISFIES RULE 23 AND THE PSLRA

Plain and simple, of all the movants for Lead Plaintiff, Steven Oppenheimer has the greatest financial interest of any movant that does not have some sort of unique circumstances which render that movant atypical. Steven Oppenheimer purchased $1.55 million worth of auction rate securities from Defendants during the proposed Class Period which he continues to hold and which *continue to be illiquid*. As demonstrated in his motion for appointment as Lead Plaintiff, filed May 20, 2008, Steven Oppenheimer meets all the requirements of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Federal Rule of Civil Procedure 23 ("Rule 23") to serve as Lead Plaintiff. Indeed, the opposition papers filed by the Competing Movants set forth no assertions or indications that Steven Oppenheimer is anything but an abundantly adequate Lead Plaintiff movant.

1

### A. The Chandler Group is Atypical and is a Large Aggregation of Individuals

The claims of the Class members are predicated on the fact that the auction rate securities purchased by them are illiquid.[1] *See*, *e.g.*, ¶¶ 3-4. As of the date the Chandler Group filed its motion for appointment as Lead Plaintiff, $3.2 million worth of its auction rate securities had already been redeemed. *See* Memorandum of Law in Support of the Motion of the Chandler Group for Consolidation of Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Chandler Memo") (Dkt. No. 28), at 8-9; *see also* Declaration of Jonathan K. Levine in Support of the Motion of the Chandler Group for Consolidation of Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel (Dkt. No. 29), at Exhibit K. In addition, subsequent to the time the Chandler Group filed its Lead Plaintiff motion, it was announced that at least an additional $3,743,500 worth of the Chandler Group's auction rate securities are being redeemed, with more redemptions to follow. *See* Declaration of Jerome M. Congress in Further Support of the Motion of Aric A. Streit and Mary Streit as Trustees for the Benefit of the Streit Living Trust for Lead Plaintiff Appointment, and in Opposition to Competing Lead Plaintiff Motions ("Congress Decl.") (Dkt. No. 44), at Ex. C-F. These redemptions clearly demonstrate that the Chandler Group cannot satisfy the typicality requirement of Rule 23 because the claims of the Chandler Group are markedly different from those of the other Class members whose auction rate securities are truly illiquid and have not been redeemed. The problem with the Chandler Group's redemptions has also been pointed out by the Streit Group. *See* Memorandum of law of Aric A. Streit and Mary Streit as Trusttes for the Benefit of the Streit Living Trust and in Further Support of Lead Plaintiff Appointment, and in Opposition to Competing Lead Plaintiff Motions ("Streit Opp.") (Dkt. No. 43), at 6-8.

---

1    References to the facts are to the complaint in *Chandler v. UBS AG et al.*, 08-CV-02967

2

In contrast to the Chandler Group, Steven Oppenheimer's portfolio consists of the kinds of auction rate securities as to which almost no redemption activity has occurred. Therefore his investments truly are illiquid as alleged in the Complaint. *See*, *e.g.*, ¶¶ 3-4.

In addition, the Chandler Group is a large aggregation of 7 individuals. The size of the Chandler Group is disfavored by this District and exceeds the SEC's "three to five" limit rule for lead plaintiff groups. *See*, *e.g.*, *In re Star Gas Sec. Litig.*, 2005 U.S. Dist. LEXIS 5827, *12, n 9 (D. Conn. Apr. 8, 2005) ("[t]he Securities and Exchange Commission takes the position that a group of no more than three to five investors should be appointed as lead plaintiffs, to ensure that the plaintiffs are able to maintain control of the litigation") (citing *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 216 (D.D.C. 1999)); *see also In re eSpeed, Inc. Securities Litigation*, 05-civ-2091, 232 F.R.D. 95, 98-99 (S.D.N.Y. 2005). Both the Streit Group and the UBS ARS Group have also opposed the improper attempt by the Chandler Group to aggregate its interests in such a fashion. Streit Opp. (Dkt. No. 43), at 2, 11-17; Response of UBS ARS Group to Competing Motions for Consolidation, Appointment of Lead Plaintiff and Lead Counsel ("UBS ARS Opp.") (Dkt. No. 30), at 6.

### B. The Streit Group's Claims Are Atypical

The Streit Group's financial interest is not representative of the relief sought by the proposed Class. Unlike all other movants, the Streits attempt to tack on the amount of loan secured by their auction rate securities. *See* Memorandum of Law in Support of the Motion of Aric A. Streit and Mary Streit as Trustees for the Benefit of the Streit Living Trust for Consolidation, Appointment as Lead Plaintiffs and Approval of Lead Plaintiffs' Selection of Co-Lead Counsel ("Streit Memo") (Docket No. 22), at 2-3. The Streits have not explained how the

---

(LMM) (S.D.N.Y. Mar. 21, 2008) (referred to as "¶ __").

loan transactions enter into the determination of the relief sought by the Class.

Including the collateralized loan undermines the Streit Group's typicality to serve as Lead Plaintiff. The Streit Group's atypicality has also been recognized by the Chandler Group for this very reason. *See* Response of the Chandler Group to Cross Motions for Consolidation of Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Chandler Group Opp.") (Dkt. No. 42), at 5-7. Such a debt secured by auction rate securities is atypical of the proposed Class members' interest in this litigation. The fact that the Streits make no reference to their loan in the typicality section of their motion for appointment as Lead Plaintiff is telling. *See* Streit Memo (Dkt. No. 22), at 10-13.

        **C.**      **The Sanchez Group is a Large Aggregation of Individuals and is Atypical**

The Sanchez Group has filed no opposition to the motion of Steven Oppenheimer or to any other Competing Movant to serve as lead plaintiff, so it appears the Sanchez Group may have conceded it would not be the most adequate Lead Plaintiff. In any event, the Sanchez Group is a large aggregation of 14 individuals, which is disfavored and exceeds the SEC's "three to five" rule for lead plaintiff groups. *See*, *e.g.*, *In re Star Gas Sec. Litig.*, 2005 U.S. Dist. LEXIS 5827, *12, n 9 ("[t]he Securities and Exchange Commission takes the position that a group of no more than three to five investors should be appointed as lead plaintiffs, to ensure that the plaintiffs are able to maintain control of the litigation") (citing *In re Baan Co. Sec. Litig.*, 186 F.R.D. at 216). The improper attempt by the Sanchez Group to aggregate its interests has also been recognized by the Chandler Group and the UBS ARS Group. *See* Chandler Group Opp. (Dkt. No. 42), at 9; UBS ARS Opp. (Dkt. No. 30), at 6.

In addition, the Sanchez Group has received redemptions and completed sales on the secondary market. *See* Memorandum of Law in Support of the Sanchez Group's Motion for (1)

4

Appointment as Lead Plaintiff and (2) Approval of Their Selection of Lead Counsel ("Sanchez Memo") (Dkt. No. 19), at 9 n. 3; Congress Decl.(Dkt. No. 44), at Ex. C-G.

### D. The UBS ARS Group Does Not Include A True Institution

As explained more fully in the Oppenheimer Opposition Brief (Dkt. No. 41) at 4-5, the UBS ARS Group does not include an "institutional investor." The discrepancy between what the UBS ARS Group claims is an institutional investor and what courts have found is an institutional investor has also been recognized by the Chandler Group. *See* Chandler Group Opp. (Dkt. No. 42), at 10.

Teachers Count, the member of the UBS ARS Group that claims it is an "institution," purchased a total of $25,000 worth of auction rate securities. *See* Declaration of Michael J. Flannery in Support of UBS ARS Group for Appointment as Lead Plaintiff, Approval of Selection of Counsel and Consolidation of Related Actions (Dkt. No. 16), at Ex. B. A mere investment of $25,000 should not entitle Teacher's Count to be treated as an institutional investor. The Court in *In re eSpeed*, 232 F.R.D. at 99-100, speaks of "institutional investor[s] with substantial losses," and as the court observed in *Malasky v. IAC/InterActiveCorp.*, 2005 U.S. Dist. LEXIS 3628, *8 (S.D.N.Y. 2005), the term "institutional investor" is defined in Black's Law Dictionary to mean "large investors, such as mutual funds, pension funds, insurance companies, and others who largely invest other people's money." *Malasky*, 2005 U.S. Dist. LEXIS 3628, *8 (citing Black's Law Dictionary, at 801 (6th ed. 1990)). Therefore, any preference for institutional investors envisioned by Congress in enacting the PSLRA is inapplicable to the UBS ARS Group.

## **CONCLUSION**

For all the foregoing reasons, Steven Oppenheimer respectfully requests that the Court grant his motion for appointment as Lead Plaintiff and approve his selection of Lead Counsel.

Dated: June 19, 2008

                                                  Respectfully submitted,

                                                  **STULL, STULL & BRODY**

                                      By: /s/ James Henry Glavin IV
                                                  Jules Brody (JB-9151)
                                                  James Henry Glavin IV (JG-2188)
                                                  6 East 45th Street
                                                  New York, New York 10017
                                                  (212) 687-7230

                                                  **WEISS & LURIE**
                                                  Jordan L. Lurie
                                                  10940 Wilshire Blvd.
                                                  Suite 2300
                                                  Los Angeles, California 90024
                                                  (310) 208-2800

                                                  **Proposed Lead Counsel**